IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

EMJ CORPORATION and
WESTCHESTER FIRE INSURANCE COMPANY                                     PLAINTIFFS

v.                                                   CIVIL ACTION NO. 2:11-CV-00228-GHD-JMV

HUDSON SPECIALTY INSURANCE COMPANY                                      DEFENDANT

MEMORANDUM OPINION DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Presently before the Court in this declaratory judgment action are Plaintiffs' motion for partial summary judgment [21] and Defendant's motion for summary judgment [40]. Upon due consideration, the Court finds that both motions should be denied, because genuine disputes of material fact exist that preclude the granting of summary judgment.

*A. Summary Judgment Standard*

This Court grants summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes

1

demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S. Ct. 2548. Under Rule 56(a) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).

### B. Factual and Procedural Background

On or about February 15, 2005, EMJ Corporation ("EMJ") and Contract Steel Construction, Inc. ("Contract Steel") entered into a subcontractor agreement for the execution of work on a JC Penney Project in Southaven, Mississippi (the "Project"). EMJ was the general contractor on the Project. Contract Steel was the contractor, performing, in relevant part, the installation of a steel stairway, which was designed and constructed by another entity. With regard to requisite liability insurance coverage, the subcontractor agreement provides in relevant part:

> [Contract Steel] shall maintain, at its own cost, such insurance as will protect it and [EMJ] from . . . any claim for bodily injury, . . . both physical and loss of use, which may arise from the Work or any performance under the [s]ubcontract, whether such work or performance are by [Contract Steel] or its officers, agents, subcontractors, suppliers, employees[,] or those with whom it controls for any part of the Work . . . . This indemnification shall only be applicable to the conduct attributable to [Contract Steel] or anyone directly or indirectly employed, contracted[,] or supervised by [Contract Steel] or by anyone for whose acts [Contract Steel] may be liable.

Subcontractor Agreement [1-1] at 2 ¶ 5. In accordance with the subcontractor agreement, Contract Steel took out insurance policies, including one from Hudson Specialty Insurance

Company ("Hudson Specialty"). In relevant part, the Hudson Specialty Policy provides that an insured under the policy includes:

> [a]ny person or organization for whom you [Contract Steel] have agreed in writing prior to any "occurrence" or "offense" to provide insurance such as is afforded by this policy, but only with respect to operations performed by you [Contract Steel] or on your behalf, or facilities owned or used by you [Contract Steel].

Hudson Specialty Policy [1-4] at 22, Part III(2)(f).

Thereafter, Contract Steel installed a steel stairway at the Project and tendered the installation of the stairway to EMJ, which accepted it. Approximately two weeks later, JC Penney apparently engaged Professional Services Industries, Inc. to inspect an entrance canopy at the construction site. John Meeker, an employee of Professional Services Industries, Inc., was assigned the job. In the course of conducting the inspection, Meeker fell while descending the steel stairway previously installed by Contract Steel. Meeker sustained injuries that rendered him a paraplegic.

On or about April 24, 2008, Meeker and his wife sued Contract Steel, EMJ, and others in the Circuit Court of Desoto County in an action styled *John Meeker et al. v. J.C. Penney Corp., Inc., et al.*, Civil Action No. CV2008-0148, seeking damages for Meeker's personal injuries. Apparently, the claims asserted include allegations that the steps, as installed, were too steep to be safely navigated and lacked an anti-slip surface application. The state-court litigation is still ongoing. However, the state-court judge has dismissed the claims by the Meekers against Contract Steel, as well as a cross-claim by EMJ against Contract Steel for indemnity. In his opinion, the state-court judge explained that under Mississippi law once a contractor or owner accepts the work of a subcontractor or contractor, liability for injuries related to the work accepted shifts to the party accepting the work, regardless of the subcontractor's negligent

performance of the contract. Consequently, the state-court judge held that Contract Steel owed no duty to Meeker; only EMJ could owe such a duty to Meeker. The state-court judge further found that that the responsibility for applying a non-slip coating to the steps was outside the scope of Contract Steel's contractual obligations; thus, Contract Steel was found to have no liability to Meeker on that basis, as well. According to Contract Steel and EMJ, the Meekers' sole remaining allegation in the underlying state-court litigation is one for unspecified "independent" or "sole" negligence of EMJ. This Court notes that the state-court judge expressly reserved ruling on whether EMJ might nevertheless allocate fault to Contract Steel at the state-court trial. After Contract Steel was dismissed from the state-court case, the state-court judge stayed the proceeding pending EMJ's appeal of the state-court rulings to the Mississippi Court of Appeals. That court recently affirmed the state court's granting of summary judgment to Contract Steel, holding in accordance with the Desoto County Circuit Court judge that

> [t]he general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, <u>even though the injury results from the contractor's failure properly to carry out his contract</u>. When the work is finished by the contractor and accepted by the employer, the latter is substituted as the party responsible for existing defects, and <u>the</u> same rule is applied to subcontractors, so as to relieve them from liability to the original employer where their work has been finished and accepted by the original contractor.

*EMJ Corp. v. Contract Steel Constr., Inc.*, 81 So. 3d 295, 299–300 (Miss. Ct. App. 2012) (emphases added).

Meanwhile, on November 28, 2011, Plaintiffs EMJ and Westchester Fire Insurance Company ("Westchester") (collectively, "Plaintiffs") filed this action for a declaratory judgment

against Hudson Specialty in this Court.[1] Plaintiffs seek a declaration of the rights and obligations of all persons interested under the Hudson Specialty Policy, pursuant to Rule 57 of the Federal Rules of Civil Procedure; the United States Declaratory Judgment Act, 28 U.S.C. § 2201; and otherwise. Plaintiffs ask the Court to find, *inter alia*, that EMJ is owed coverage under the Hudson Specialty Policy, that Hudson Specialty is the primary insurer, and that Hudson Specialty breached the terms of the Hudson Specialty Policy by not defending and indemnifying EMJ in the underlying state-court litigation. By way of the instant motion for partial summary judgment [21], EMJ seeks a determination that it is an additional insured under the Hudson Specialty Policy. By way of the instant motion for summary judgment [40], Hudson Specialty seeks a determination that, *inter alia*, EMJ is not an additional insured.

### C. Plaintiffs' Arguments

As earlier noted, the Hudson Specialty Policy provides in pertinent part that an insured includes:

> [a]ny person or organization for whom you [Contract Steel] have agreed in writing prior to any "occurrence" or "offense" to provide insurance such as is afforded by this policy, but only with respect to operations performed by you [Contract Steel] or on your behalf, or facilities owned or used by you [Contract Steel].

Hudson Specialty Policy [1-4] at 22 § III (2)(f). Plaintiffs maintain that because the language of the subcontractor agreement provides that EMJ is to be named an "additional insured" on Contract Steel's insurance policies covering the Project, Contract Steel is an "additional insured" under that policy—even if the Meekers seek recovery from EMJ for its independent acts of negligence, rather than merely on account of any negligence of its subcontractor, Contract Steel. Plaintiffs argue that this Court should rule that EMJ is an "additional insured" on the Hudson

---

[1] Amerisure was also originally named as a defendant, but it has since been terminated from the case per the mutual agreement of the parties.

Specialty Policy, because "[a] number of courts have held that [the policy language: "but only with respect to operations performed by you or on your behalf, or facilities owned or used by you"] does not preclude additional insured coverage where the injuries were caused by the additional insured's sole negligence." Pls.' Mem. Supp. Mot. PSJ [22] at 12 (citing cases) (emphasis added). According to Plaintiffs, Meeker's injuries arise with respect to Contract Steel's operations at the Project site (the installation of the steel ladder); thus, Plaintiffs assert that this Court should find that EMJ is an additional insured under the Hudson Specialty Policy for its own independent acts of negligence. Plaintiffs additionally argue that Meeker's injuries arise with respect to Contract Steel's ownership or use of the facilities at the Project site, "notwithstanding that the accident may have been determined [in the underlying state-court litigation] to have not been caused by the fault of Contract Steel." Id. at 22 (emphasis added). Plaintiffs further assert that the policy definition of "additional insured" should be interpreted against Hudson Specialty, because the definition is akin to an exclusionary clause and/or is ambiguous.

### D. Hudson Specialty's Arguments

Hudson Specialty argues in both its response and its subsequent motion for summary judgment [40] that EMJ is not an "additional insured" on the Hudson Specialty Policy, because even under the cases cited by Plaintiffs in support of their argument that case law does not preclude a finding that a party is an "additional insured" merely because independent acts of negligence are the only allegations against that party, the underlying claim at issue must be shown to bear at least a sufficient causal nexus to any "facilities owned or used" by the named insured (in this case, Contract Steel), or the named insured's (Contract Steel's) "operations" at the Project site. Hudson Specialty further argues that there is no sufficient causal nexus, because

the underlying claim at issue does not bear a sufficient causal nexus to any "facilities owned or used" by the "named insured" and Meeker's accident, or the "named insured's" "operations" at the subject job-site and Meeker's accident.

Hudson Specialty further argues that Plaintiffs have failed to demonstrate an "occurrence" to trigger coverage under the Hudson Specialty Policy, and that even if an "occurrence" has been demonstrated, coverage is excluded by Hudson Specialty Policy's "expected or intended" injury exclusion and/or its "professional services" exclusion. The Hudson Specialty Policy Defines an "occurrence" as an "accident." According to Hudson Specialty, under applicable Mississippi law, an intentional act that the actor foresees and anticipates will result in the injury suffered is not an accident. Hudson Specialty argues that Meeker's injury was not an accident, because the Mississippi Court of Appeals affirmed the Desoto County Circuit Court's finding that EMJ, with knowledge of the fact that the subject stairway was shorter than anticipated, nevertheless ordered its installation.

### E. *Analysis and Discussion*

The Court finds that upon consideration of Plaintiffs' motion for partial summary judgment, the response, reply, accompanying briefs, rules, and authorities, summary judgment is not proper on the issue of whether EMJ was an "additional insured" on the Hudson Specialty Policy. The judge in the underlying state-court litigation dismissed Contract Steel from the case, finding that Contract Steel breached no duty to the Meekers as a matter of law. However, the state-court judge did not rule that the injuries were not incurred with respect to the operations of Contract Steel at the Project site. In fact, the state-court judge expressly reserved ruling on the issue of "whether [the state-court judge's] ruling would affect EMJ's right to 'place the blame' on Contract [Steel] at trial," stating that "[s]uch evidentiary issues should be brought before the

[state-court judge] as a motion *in limine*" or "during the jury instruction phase of the trial." *See* Desoto Cnty. Cir. Ct.'s Order Granting Contract Steel's MSJ [27-1]. The state court's reservation in this respect is consistent with Mississippi Court of Appeals' recitation that under Mississippi law a subcontractor has no liability to a third party for injuries related to a job that has been accepted by the owner or contractor—even though the injuries may relate to malperformance by the subcontractor. In other words, with one narrow exception,[2] contrary to Hudson Specialty's argument, there has been no judicial resolution in the state court of the degree of relationship, if any, between the injuries suffered by Meeker to the operations/ownership or use of Contract Steel's facilities. Any ruling concerning the existence of any such causal nexus by this Court is dependent on any ruling by the state court in the underlying state-court litigation. At this juncture, it is not sufficiently clear from the arguments of counsel and the record what degree of relationship, if any, exists between Meeker's injuries and the operations of Contract Steel at the Project site. Accordingly, genuine disputes of material fact exist that preclude the granting of summary judgment on this issue to Plaintiffs.

Similarly, the Court finds upon due consideration that Hudson Specialty's motion for summary judgment should also be denied. As stated above, genuine disputes of material fact exist with respect to whether EMJ is an "additional injured" under the Hudson Specialty Policy. Genuine disputes also exist with respect to whether an "occurrence" is demonstrated that would trigger coverage under the Hudson Specialty Policy, and with respect to whether in any event the policy's "expected or intended" injury exclusion and/or its "professional services" exclusion would bar coverage. Hudson Specialty maintains that there was no occurrence to trigger

---

[2] The issue of whether Contract Steel bore any responsibility for the application/non-application of a non-slip surface on the subject stairway has been judicially established in the state-court action not to have been the responsibility of Contract Steel, because it was not within Contract Steel's scope of work under the subcontract.

8

coverage, but there was instead an intentional act that was foreseen and anticipated. Although the Mississippi Court of Appeals found that EMJ ordered the installation of the stairway despite its knowledge that the stairway was shorter than anticipated, that court also found that EMJ poured a concrete base under the stairway prior to its installation. It is simply unclear from the record whether the intent of that concrete base was to ameliorate the shortfall in the stairway's height. Moreover, there is no undisputed evidence in the record that EMJ consciously withheld application of the anti-slip skid surface to the stairway.

Hudson Specialty's remaining efforts to avoid coverage by reliance on certain policy exclusions—namely the intentional injury exclusion and/or the professional services exclusion—are similarly flawed. Hudson Specialty has failed to demonstrate to this Court's satisfaction that no genuine dispute of fact exists with respect to whether the Meeker injuries were intentional, or that the professional services exclusion has any application here. Instead, the Court finds that genuine disputes of material fact exist in this case which preclude summary judgment to Hudson Specialty. Therefore, the Court finds that Hudson Specialty's motion for summary judgment should also be denied.

### F. Conclusion

In sum, the Court finds that Plaintiffs' motion for partial summary judgment [21] and Hudson Specialty's motion for summary judgment [40] should be DENIED.

An order in accordance with this opinion shall issue this day.

THIS, the 22nd day of March, 2013.

SENIOR JUDGE

9