IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

EMJ CORPORATION and
WESTCHESTER FIRE INSURANCE COMPANY                                  PLAINTIFFS

v.                                              CIVIL ACTION NO. 2:11-cv-00228-GHD-JMV

HUDSON SPECIALTY INSURANCE COMPANY                                    DEFENDANT

MEMORANDUM OPINION DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON INSURED STATUS, PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ON PRIORITY OF COVERAGE, DEFENDANT'S SECOND
MOTION FOR SUMMARY JUDGMENT, AND
DEFENDANT'S MOTION TO BIFURCATE TRIAL

Presently before the Court in this declaratory judgment action are Plaintiffs' motion for partial summary judgment on insured status [78], Defendant's second motion for summary judgment [96], Plaintiffs' motion for partial summary judgment on priority of coverage [98], and Defendant's motion to bifurcate trial [120].[1] Upon due consideration of the parties' motions, responses, replies, corresponding briefs, exhibits, and authorities, the Court finds that the four motions should be denied. Genuine disputes of material fact still exist that preclude the granting of summary judgment, and bifurcation of the trial on Plaintiffs' bad faith/punitive damages claim is not warranted.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Weaver v.*

---

[1] Also pending are the following motions, which will be ruled on at a later date: Plaintiffs' motion to permit use of depositions from prior underlying litigation as evidence [100], Defendant's motion to strike proposed expert testimony [104], Plaintiffs' motion *in limine* to exclude evidence [118], Defendant's motion *in limine* to exclude undesignated testimony and untimely designated testimony [122], and Defendant's motion *in limine* to exclude Dr. Stan Smith [124].

1

*CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

Where the parties dispute the facts, the Court must view the facts and draw reasonable inferences in the light most favorable to the plaintiff. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal citations omitted). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F. App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

On or about February 15, 2005, EMJ Corporation ("EMJ") and Contract Steel Construction, Inc. ("Contract Steel") entered into a subcontractor agreement for the execution of work on a JC Penney Project in Southaven, Mississippi (the "Project"). EMJ was the general contractor on the Project. Contract Steel was the subcontractor, performing, in relevant part, the

installation of a steel stairway, which was designed and constructed by another entity. With regard to requisite liability insurance coverage, the subcontractor agreement provides in relevant part:

> [Contract Steel] shall maintain, at its own cost, such insurance as will protect it and [EMJ] from . . . any claim for bodily injury, . . . both physical and loss of use, which may arise from the Work or any performance under the [s]ubcontract, whether such work or performance are by [Contract Steel] or its officers, agents, subcontractors, suppliers, employees[,] or those with whom it controls for any part of the Work . . . . This indemnification shall only be applicable to the conduct attributable to [Contract Steel] or anyone directly or indirectly employed, contracted[,] or supervised by [Contract Steel] or by anyone for whose acts [Contract Steel] may be liable.

Subcontractor Agreement [1-1] at 2, ¶ 5. In accordance with the subcontractor agreement, Contract Steel took out insurance policies, including one from Hudson Specialty Insurance Company ("Hudson Specialty"). In relevant part, the Hudson Specialty Policy provides that an insured under the policy includes:

> [a]ny person or organization for whom you [Contract Steel] have agreed in writing prior to any "occurrence" or "offense" to provide insurance such as is afforded by this policy, but only with respect to operations performed by you [Contract Steel] or on your behalf, or facilities owned or used by you [Contract Steel].

Hudson Specialty Policy [1-4] at 22, Part III(2)(f).

Thereafter, Contract Steel installed a steel stairway at the Project and tendered the installation of the stairway to EMJ, which accepted it. Approximately two weeks later, JC Penney apparently engaged Professional Services Industries, Inc. to inspect an entrance canopy at the construction site. John Meeker, an employee of Professional Services Industries, Inc., was assigned the job. In the course of conducting the inspection, Meeker fell while descending the

3

steel stairway previously installed by Contract Steel. Meeker sustained injuries that rendered him a paraplegic.

On or about April 24, 2008, Meeker and his wife sued Contract Steel, EMJ, and others in the Circuit Court of Desoto County in an action styled *John Meeker et al. v. J.C. Penney Corp., Inc., et al.*, Civil Action No. CV2008-0148, seeking damages for Meeker's personal injuries. Apparently, the claims asserted included allegations that the steps, as installed, were too steep to be safely navigated and lacked an anti-slip surface application. The state-court judge dismissed the claims by the Meekers against Contract Steel, as well as a cross-claim by EMJ against Contract Steel for indemnity. In his opinion, the state-court judge explained that under Mississippi law once a contractor or owner accepts the work of a subcontractor or contractor, liability for injuries related to the work accepted shifts to the party accepting the work, regardless of the subcontractor's negligent performance of the contract. Consequently, the state-court judge held that Contract Steel owed no duty to Meeker; only EMJ could owe such a duty to Meeker. The state-court judge further found that that the responsibility for applying a non-slip coating to the steps was outside the scope of Contract Steel's contractual obligations; thus, Contract Steel was found to have no liability to Meeker on that basis, as well. According to Plaintiffs, the Meekers' remaining allegation in the underlying state-court litigation was one for unspecified "independent" or "sole" negligence of EMJ. This Court notes that the state-court judge expressly reserved ruling on whether EMJ might nevertheless allocate fault to Contract Steel at the state-court trial. After Contract Steel was dismissed from the state-court case, the state-court judge stayed the proceeding pending EMJ's appeal of the state-court rulings to the Mississippi Court of Appeals. That court affirmed the state court's granting of summary judgment to Contract Steel, holding in accordance with the Desoto County Circuit Court judge that

> [t]he general rule is well established that an independent contractor is not liable for injuries occurring to a third person after the contractor has completed the work and turned it over to the owner or employer and it has been accepted by him, <u>even though the injury results from the contractor's failure properly to carry out his contract</u>. When the work is finished by the contractor and accepted by the employer, the latter is substituted as the party responsible for existing defects, and <u>the</u> same rule is applied to subcontractors, so as to relieve them from liability to the original employer where their work has been finished and accepted by the original contractor.

*EMJ Corp. v. Contract Steel Constr., Inc.*, 81 So. 3d 295, 299–300 (Miss. Ct. App. 2012) (emphases added). Subsequently, the Meekers' claims against EMJ were settled and the state case dismissed.

Meanwhile, on November 28, 2011, Plaintiffs EMJ and Westchester Fire Insurance Company ("Westchester") (collectively, "Plaintiffs") filed this action against Hudson Specialty in this Court.[2] The parties agree that Mississippi law governs in this declaratory judgment action based on diversity jurisdiction. Plaintiffs seek a declaration of the rights and obligations of all persons interested under the Hudson Specialty Policy, pursuant to Rule 57 of the Federal Rules of Civil Procedure; the United States Declaratory Judgment Act, 28 U.S.C. § 2201; and otherwise. Plaintiffs ask the Court to find, *inter alia*, that EMJ is owed coverage under the Hudson Specialty Policy and that Hudson Specialty is the primary insurer. Hudson Specialty seeks a determination that, *inter alia*, EMJ is not an additional insured. The parties have urged their arguments in prior motions for summary judgment.

The Court has carefully considered the parties' arguments and concludes that a ruling on any individual issue raised by the parties would require the Court to weigh evidence and make credibility determinations which is clearly not the office of the Court in ruling on summary

---

[2] Amerisure was also originally named as a defendant, but it has since been terminated from the case per the mutual agreement of the parties.

judgment motions. The Fifth Circuit has stated repeatedly: "The trial court may not weigh evidence or make credibility determinations when considering a motion for summary judgment." *See, e.g.*, *Comeaux v. Sutton*, 496 F. App'x 368, 369 (5th Cir. 2012) (per curiam) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). In the case *sub judice*, myriad disputes of fact exist that preclude summary judgment, including but not limited to, whether there was an intentional act and a harm which was reasonably foreseeable, as pertains to the issue of whether there is an "occurrence" to trigger coverage under the Hudson Specialty Policy; if so, whether it was with respect to the "operations" of Contract Steel; whether Westchester volunteered payment in the underlying state-court litigation; and whether the Westchester Policy was a prorated policy or an excess policy. In view of the numerous and often-overlapping and conflicting facts asserted as to these multiple issues, this Court is of the opinion that a piecemeal ruling is not the proper course to take. Accordingly, the Court finds that the proper course of action is to DENY Plaintiffs' motion for partial summary judgment on insured status [78], Defendant's second motion for summary judgment [96], and Plaintiffs' motion for partial summary judgment on priority of coverage [98]. This case shall proceed to trial.

Lastly, the Court turns to Hudson Specialty's motion to bifurcate [120], wherein Hudson Specialty requests a separate trial on Plaintiffs' bad faith/punitive damages claim. Since the enactment of Mississippi Code § 11-1-65, the Court bifurcates the issue of punitive damages in a diversity case wherein Mississippi law governs. Pursuant to that statute, only in the event of an award of compensatory damages will the Court determine whether the matter of punitive damages should be presented to the jury. *See Union Carbide Corp. v. Nix, Jr.*, --- So. 3d ---, 2014 WL 2535241, at *13 (Miss. June 5, 2014) ("Punitive damages do not exist in a vacuum.

Absent a valid claim for compensatory damages, there can be no claim for punitive damages."). In no event will there be a separate trial with a different jury. Accordingly, Hudson Specialty's motion to bifurcate and conduct a separate trial on Plaintiffs' bad faith/punitive damages claim [120] is DENIED.

An order in accordance with this opinion shall issue this day.

THIS, the 26 day of August, 2014.

_____
SENIOR JUDGE